[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff wife against the defendant husband. The parties were married in Milford, Connecticut on September 21, 1981. Both of them, at the time of the divorce action was brought, were still living in the marital home in Milford. There is one child issue of the marriage, Rebecca Sperry, born June 24, 1982.
While it is apparent to the court that the marriage has broken down irretrievably, the defendant was still hoping to save the marriage at some time.
The parties have agreed on custody and have filed a stipulation to that effect providing for joint custody with the child's primary physical residence to be with the plaintiff wife. A copy of the stipulation is attached to and made a part of this decision, and the parties are ordered to comply with the provisions thereof.
The court finds that the stipulation is in the best interest of the child and, therefore, makes it an order of this court.
This appears to be a strange marriage with the testimony of the plaintiff indicating constant fighting beginning early in the marriage and continuing to the presents They both went for counseling but it had no apparent effect. The main reasons for the disagreements related to money on the one hand and the problems arising from the fact that the plaintiff had a son from another marriage and the defendant appeared not to treat the son the way she thought he should. It may also have to do with the fact that the father of the son from the former marriage initially was only contributing $25.00 a week for the son's support. This amount was recently raised to $75.00 a week.
Since the claim of the plaintiff is that the defendant was never willing to spend money even when he had it, it would appear that the lack of money from the son's father was probably an exacerbating factor with respect to the defendant's attitude CT Page 2 toward his stepson.
In any event, the parties are at odds over money so much so that they even asked a friend to come in and determine whether they had enough money to buy a car.
The defendant runs a frame molding business in which he has been engaged for some 13 years with a partner who testified on his behalf. The plaintiff, on the other hand, is a high school graduate and has worked in a variety of jobs during the marriage. The income therefrom, however, appears to have been somewhat minimal, $5.00 an hour some years ago at St. Vincent's Hospital as some kind of aide.
The major problem with determining what the amount of alimony and support should be is the difficulty in determining exactly what the defendant's earnings are. He appears to have earned some $30,000.00 a year in 1989, but at the present, he is stating his earnings to be more like $26,000.00 a year. On the other hand, the income tax returns from his partnership show a decline in the net income as well as in the gross income from 1987 to the present time.
He does indeed have equity in the business and has always been reluctant to take as much in salary as his partner.
The plaintiff seems to think that she should not have to work for the next four years but should be supported by her husband while she attends school. This seems totally unrealistic to the court since there does not seem to be enough I money to provide the kind of income she would need to do this. Even the amount suggested in her claims for relief would not seem to be sufficient for this purpose. However, she could get a part time job and with the help from the child support and alimony which this court will grant she could make a go of it I although it might take her longer than the projected three to four years to get her degree.
The court is somewhat at a loss in terms of evaluating the defendant's business because there was no expert provided by either party for that purpose, and the attempt by the defendant to use his own accountant to suggest that the business is not worth anything or very little was scarcely credible since it was based entirely upon figures given the accountant by the defendant and was not audited by the accountant.
Further, while the figures presented by the accountant do indicate a gradual reduction in gross sales from 1988 through 1989 to the present time, each of the partners, according to those figures, has a substantial equity of at least $30,000.00 CT Page 3 each in the business. Further, the equipment used must be of some value since it has been depreciated at the rate of over $2,000.00 per year, and that depreciation is presently, according to the balance sheet, exhibit 3, accumulated to the extent of $42,035.11. Since that is deducted from the total assets, despite those assets being given a value in the balance sheet, it would appear that $42,035.11 should be added to the total stated assets of $264,586.36 or a total $306,621.00. This, in turn, means that the equity which the partners each has should be increased to a total of $95,388.00 with Mr. Sperry's share, upon the same basis as appears in exhibit 3, $56,915.63.
Further, the balance sheet for May 31st, 1990, exhibit 3, indicates Mr. Sperry's equity at the beginning of the period was $46,314.11, and that he, in effect, drew $1,000.00 less as his pay than did Mr. Hornyak for the same period.
In sum, the figures are difficult to understand but at least, even according to the defendant's accountant, the building has assets which exceed liabilities and the partners have equity of at least $30,000.00 each if not more.
On the basis of the tax returns and the financial statement as well as the affidavit, the court finds that the defendant's income is a minimum of $30,000.00 a year, and on that basis, will apply the guidelines to determine the amount of child support and spousal support they indicate.
The plaintiff, on the other hand, has not worked recently, but the last time she did work she earned some $5.00 an hour. She also testified that she had looked for jobs and found that all she could get paid was about $5.00 an hour or assuming she was working part time, a $100.00 a week. I will use that, also, as a basis for applying the guidelines since that could be termed to be her earning capacity given the fact that she has a child for whose care she is responsible. This limits the amount of time she can spend either working or going to school or, in the alternative, requires that she provide child care which is an additional expense.
Perhaps the most significant factor with respect to Mr. Sperry's income is that he, in effect, determines how much will be deducted for his income tax and social security tax or, in effect, whether any will be deducted from his pay or simply paid by the company as one of its expenses. The court is unclear about that and will, therefore, include the deductions which he, in fact, owes for FICA and his income tax from his total gross income of $30,000.00, but in the same amount which he listed on his affidavit. CT Page 4
It is found by the court that there was no one person totally responsible for the breakdown of this marriage. There was apparently total disagreement about money, how much should be spent and on what, and there was also the problem, as indicated previously, of the position of the child of the prior marriage. The court further finds that the contribution of each to the assets of the marriage were equal, the plaintiff's in taking care of the house and the child and the income she earned when she worked at various jobs even though it seems to have been minimal, and the defendant in providing most of the financial support for the marriage and for the purchase of the house. While the defendant claims that he should be reimbursed for part of his inheritance which he received during the marriage which he used as a down payment for the house, the court finds that that was part of the marital estate, and he is not entitled to reimbursement for that as such.
In fact, it seems to the court that the only fair way of allocating the assets is to give the plaintiff the house with all the attendant responsibilities of its maintenance, upkeep, and mortgage and tax payments and allow the defendant to retain his business. His equity in the business appears to be somewhere between $30,000.00 and $45,000.00 and the equity in I the home appears to be in the same neighborhood. It is clear to the court that the plaintiff is not going to be able to maintain the house unless she obtains a job to supplement her alimony and support payments. She does, indeed, then have the option of selling the house which may be what ought to be done, but the court will not order it.
Having reviewed all of the considerations to be given as set forth in 46b-81 and 46b-82, the court makes the following findings and orders:
1. The parties were married in Milford, Connecticut, on September 21st, 1981, and separated in 1989.
2. There is one child issue of the marriage, Rebecca Sperry, born June 24, 1982.
3. Neither party has been the recipient of any state or federal aid.
4. All of the necessary affidavits, financial and custody and health, have been filed, and the court, therefore, has jurisdiction.
5. The marriage has broken down irretrievably with no hope of reconciliation, and it is hereby dissolved. CT Page 5
6. The defendant shall pay the plaintiff the sum of $113.00 per week as child support until the child, Rebecca, reaches her majority. The defendant shall be entitled to claim the minor child as an exemption for income tax purposes, and the plaintiff shall execute the necessary tax forms for that purpose.
7. The defendant shall pay the plaintiff $100.00 per week as alimony for four (4) years from the date of this judgment.
8. The parties shall have joint custody of their minor child, Rebecca Sperry, with the primary physical residence of Rebecca with the plaintiff wife in accordance with the stipulation with respect to custody entered into by the parties and approved by the court and made a part of this decree.
 The parties have also entered into a stipulation with respect to visitation which appears to be in the best interests of the child as does the stipulation with respect to custody, and the court approves it and enters it also as a decree of the court. It is annexed hereto as a part of this memorandum.
9. The defendant shall provide the minor child with noncancellable life insurance in the amount of $100,000.00 until her 18th birthday.
10. The defendant shall provide Blue Cross, Blue Shield, Major Medical or equivalent health care coverage for the benefit of the minor child. He shall also provide dental insurance coverage for the child if the same shall become available to him through his employment at no extra cost. He shall also pay all uninsured or unreimbursed medical, dental, psychiatric, optical and/or orthodontic expenses for the minor child.
11. The defendant shall provide health coverage for the plaintiff in accordance with the COBRA provisions at her expense for a period of three years from the date of this decree.
12. The 1986 Nissan automobile shall be the property of the plaintiff wife, and the defendant shall execute any papers necessary to effectuate this provision.
13. The defendant shall transfer all his right, title and interest in the marital home to the plaintiff within thirty (30) days of the execution of this judgment and from that date on the plaintiff will be solely responsible for the mortgage, maintenance, upkeep, taxes and all CT Page 6 expenses of the home.
 The defendant shall, however, pay the arrearage due on the mortgage up until the date of the transfer which has been allowed to lapse because of the defendant's failure to pay the pendente lite orders in the amounts ordered.
14. The defendant shall retain sole ownership of his interest in his business and the plaintiff shall have no claim on
15. The defendant shall pay the plaintiff as a contribution to her counsel fees the sum of $2,000.00 within sixty (60) days of the date of this judgment.
16. All arrears in pendente lite or alimony and child support payments shall be brought up-to-date by the defendant within two weeks of the date of this judgment.
17. The defendant shall provide the plaintiff with tax returns of his business partnership during the period she receives alimony or child support.
18. The defendant shall maintain a life insurance policy with the plaintiff as beneficiary in the amount of $100,000.00 to cover his support, alimony and health coverage obligations. He will provide proof of said policy when requested by the plaintiff.
19. The parties have waived the issuance of an immediate wage withholding and, therefore, a wage withholding order may enter contingent on the payment of the alimony and support orders in a timely manner.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE